UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

LUIS RIVERA CINTRON,

                Petitioner,

v.                                              No. 6:21-CV-00080-H

DIRECTOR, TDCJ-CID,

                Respondent.

**OPINION AND ORDER**

Petitioner Luis Rivera Cintron, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 to challenge his 2019 Brown County, Texas conviction and life sentence. Dkt. No. 1. Respondent filed an answer with brief in support and relevant records. Dkt. Nos. 12, 14, 15. Cintron filed a reply. Dkt. No. 18. As explained below, the Court concludes that Cintron's petition should be denied and dismissed with prejudice.

**1.   Background**

In January 2019, Cintron entered an open plea of guilty to sexual assault of a child and pled true to a repeat-offender enhancement. The trial court accepted Cintron's plea but deferred a finding of guilt. Later, the Court held a hearing, found Cintron guilty and the enhancement allegation to be true, and sentenced him to life imprisonment. Cintron's conviction stems from, among other evidence, the live testimony of his nephew James Rogers (a pseudonym). Rogers testified that, in June 2017, when he was 15 years old, Cintron drove him around town in his truck, and they smoked methamphetamine. While Rogers was under the influence of methamphetamine, Cintron asked Rogers to perform oral sex on him, and he did. Afterward, Cintron performed anal sex on Rogers for an hour.

The Court of Appeals for the Eleventh District of Texas (COA) affirmed Cintron's conviction, and the Texas Court of Criminal Appeals (TCCA) refused his petition for discretionary review (PDR). Dkt. Nos. 12-1, 12-8; *see Cintron v. State*, No. 11-16-00049-CR, 2019 WL 6606800 (Tex. App.—Eastland 2019, pet. ref'd).

Cintron then filed a state habeas application in the trial court, challenging the validity of his conviction and sentence on five grounds, including the alleged ineffective assistance of his trial counsel, Tony Adams. On August 25, 2021, the TCCA denied Cintron's application without written order on the findings of the trial court after an evidentiary hearing and on its independent review of the record. Dkt. No. 12-16.

Cintron filed this federal petition on December 21, 2021.[1] He challenges the legality of his conviction on four of the same ineffective-assistance-of-counsel (IAC) claims that he raised in his state habeas application. Respondent answers that Cintron's claims have no merit. Cintron disagrees, insisting that he is entitled to habeas relief.

After reviewing the parties' pleadings, relevant records, and applicable law, the Court, for the following reasons, agrees with Respondent and concludes that an evidentiary hearing is not necessary to resolve Cintron's claims. The Court will address the merits of each claim below.

2.  **Legal Standards**

    A.  **AEDPA**

This Court must review Cintron's claims under the highly deferential standard established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody

---

[1] *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (providing that a prisoner's habeas petition is deemed to be filed when he delivers the papers to prison authorities for mailing).

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States;[2] or

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]

28 U.S.C. § 2254(d)(1)–(2).

Relief may not be granted under either subsection of Section 2254(d) unless the petitioner can show that the state court's ultimate decision that a claim lacks merit was unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). It is not enough to show that the state court's decision was incorrect; federal habeas relief is "not a substitute for ordinary error correction through direct appeal." *See Sanchez v. Davis*, 936 F.3d 300, 304–05 (5th Cir. 2019) (citing *Richter*, 562 U.S. at 102–103)). Rather, the petitioner must demonstrate that the state court's ultimate decision "was so lacking in justification that there was an error so well understood and comprehended in existing law beyond any possibility

---

[2] A state-court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (explaining that a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

[3] "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Federal habeas relief is precluded even when the state court's factual determination is debatable. *Id.* at 303. State-court factual determinations are entitled to a "presumption of correctness" that a petitioner may rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This "deference extends not only to express findings of fact, but to the implicit findings of the state court." *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

3

for fairminded disagreement." *Richter*, 562 U.S. at 103. In other words, if there is any room for principled judicial disagreement on how a given claim should be adjudicated, then the petitioner is not entitled to relief. *See Sanchez*, 936 F.3d at 304.

This standard is intentionally "difficult to meet" and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Section 2254(d) was designed to confirm that state courts—not federal courts—are the principal forum for asserting constitutional challenges to state convictions and guard against only extreme malfunctions in the state criminal justice system. *See Richter*, 562 U.S. at 102–04.

When analyzing the reasonableness of a state court's ultimate decision that a claim lacks merit, the federal habeas court must (1) look to the state court's particular reasons for rejecting the claim; and (2) only consider the factual record that was before the state court when it adjudicated the claim on its merits. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *see also Evans v. Davis*, 875 F.3d 201, 217 (5th Cir. 2017) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011)).

This is a straightforward inquiry when the most recent state court to reject the claim explains its decision in a reasoned opinion. *Wilson*, 584 U.S. at 125. In that situation, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable. *Id.*

The inquiry can be more exacting when the most recent state court to reject the claim does not explain its reasons for doing so.[4] Under those circumstances, a federal habeas court must "look through" the unexplained decision to the last related state-court decision that does provide reasons, if there is one. *Id.* at 125. If an earlier decision exists, the federal habeas court should presume that the unexplained state-court decision adopted the same reasoning, and then proceed with analyzing whether it was unreasonable.[5] *Id.*

However, when there is no earlier state-court opinion to look to, the federal habeas court: (1) assumes that the state court applied the proper federal law to the facts; and (2) then determines whether its ultimate decision was contrary to or an objectively unreasonable application of that law. *See Jordan v. Dretke*, 416 F.3d 363, 368 (5th Cir. 2005) (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)); *see also Thomas v. Vannoy*, 898 F.3d 561, 569 (5th Cir. 2018) (quoting *Evans*, 875 F.3d at 217). In making this determination, the federal habeas court may infer findings of facts necessary to support the state court's ultimate decision. *See Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003). Any such implied findings are presumed correct unless the petitioner presents clear and convincing evidence that demonstrates otherwise. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004).

B.   **Ineffective Assistance of Counsel**

To prevail on an IAC claim under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show (1) "counsel's performance was deficient;" and (2) "the deficient

---

[4] Section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits." *Richter*, 562 U.S. at 100. Even summary denials of relief are entitled to substantial deference. *Id.* at 100–01.

[5] The State may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Sellers*, 138 S.Ct. at 1192.

5

performance prejudiced the defense." *Meja v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 687).

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). A court considering an IAC claim must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). This is a heavy burden that requires a "substantial," and not just a "conceivable," likelihood of a different result. *See Richter*, 562 U.S. at 112; *see also Pinholster*, 563 U.S. at 189.

"Surmounting *Strickland's* high bar is never an easy task." *Richter*, 562 U.S. at 105 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Even under de novo review, the standard for judging counsel's representation is a most deferential one. *Id.* Unlike a later-reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. *Id.* It

6

is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom." *Id.*

Establishing that a state court's application of *Strickland* was unreasonable under Section 2254(d) is all the more difficult. *Id.* The standards created by *Strickland* and Section 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. *Id.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Id.* Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under Section 2254(d). *Id.* When Section 2254(d) applies, the question is not whether counsel's actions were reasonable. *Id.* The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.* Additionally, if a petitioner fails to satisfy either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *See Strickland*, 466 U.S. at 697

3. **Analysis**

Cintron claims that Mr. Adams was ineffective in four ways. The TCCA denied his claims on the merits[6] without a written order based on the trial court's findings after an evidentiary hearing and on its own independent review of the record. Because the TCCA did not explain its decision in a written opinion, this Court must presume that the TCCA

---

[6] In Texas writ jurisprudence, a summary "denial" signifies that the state high court "addressed and rejected the merits of a particular claim," but a "dismissal" means that the court "declined to consider the claim for reasons unrelated to the claim's merits." *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *see also Barrientes v. Johnson*, 221 F.3d 741, 780 (5th Cir. 2000).

adopted the trial court's reasoning for denying Cintron's claims and determine whether it was unreasonable.

### A. Failure to Investigate Intellectual Disability (Ground One)

Throughout his federal petition, Cintron claims that Adams promised him that he would receive a probated sentence if he entered an open plea of guilty. In his first ground for relief, Cintron claims that Adams was ineffective because he failed to investigate his purported "intellectual disability" before he entered his plea. He insists that, had Adams done so, he would have discovered Cintron's low IQ of 64 and, in turn, concluded that he was unable to understand the potential consequences of his guilty plea, which included a potential life sentence. In essence, Cintron claims that Adams's failure to investigate this matter rendered his plea involuntary. Respondent answers that Cintron's claim fails because it is belied by the record, and he cannot otherwise demonstrate that the TCCA's denial of his claim was unreasonable. The Court agrees.

In a guilty-plea situation, to satisfy the second prong of *Strickland*, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In this particular factual context, Cintron can establish that he was prejudiced by Adams's failure to investigate only if he can demonstrate by a reasonable probability that he was incompetent in fact at the time of the plea. *Whitley*, 18 F.3d at 313 (citing *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990)). The test for incompetency is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Bouchillon*, 907 F.2d at 592 (citing *Dusky v. United States*, 362 U.S. 402 (1960)).

8

However, a defendant who has diminished mental capacity is not necessarily legally incompetent. *United States v. Torres*, 717 F. App'x 450, 454 (5th Cir. 2018) (citing *Godinez v. Moran*, 509 U.S. 389, 369–402 (1993)). In fact, a low IQ alone does not establish that a defendant is incompetent. *Torres*, 717 F. App'x at 454–55 (citation omitted); *see Huricks v. Thaler*, 417 F. App'x 423, 428 (5th Cir. 2011) (upholding district court's denial of habeas relief under 28 U.S.C. § 2254 for a petitioner challenging his counsel's decision not to request a competency evaluation after notice that petitioner had an IQ of 49).

Brown County Court at Law Judge Sam C. Moss held an evidentiary hearing on Cintron's claims, where he heard the live testimony of Cintron, Adams, and District Attorney Michael Murray. In concluding that Adams rendered reasonably effective assistance under *Strickland*, Judge Moss found Adams's testimony—that he had no reason to believe that Cintron misunderstood any of his explanations regarding the potential consequences of his guilty plea—was credible. Dkt. No. 12-15 at 98. In other words, Judge Moss believed Adams's testimony that he never had any reason to question Cintron's competency to enter an open plea of guilty. He also found that Cintron's claim "that he was unaware he still faced the full range of punishment at his open plea hearing [was] not credible." *Id.* at 99. Additionally, Judge Moss ultimately concluded that Cintron's guilty plea was freely and voluntarily made. *Id.* at 100. These factual and credibility findings, which the TCCA presumably adopted in denying Cintron's claim, are presumed correct unless Cintron presents clear and convincing evidence otherwise. *See Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009). Cintron has not done so here. Instead, he merely disagrees with Judge Moss's credibility and factual findings, insisting that the underlying record supports his position. Moreover, he fails to otherwise demonstrate that the TCCA's

application of *Strickland* to this claim was unreasonable. He is therefore not entitled to relief on this ground.

### B. Failure to Investigate and Present Mitigating Evidence at Punishment (Ground Two)

In his second ground, Cintron claims that Adams was ineffective because he failed to investigate and present mitigating evidence of his intellectual disability, limited ability to understand English, and gang affiliation at the trial on punishment. He contends that, had Adams done so, the trial court would have imposed a lesser sentence.

To establish *Strickland* prejudice in the state sentencing context, a defendant must show that, absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been "significantly less harsh," taking into account the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances. *See Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008) (citing *Spriggs v. Collins*, 993 F.2d 85, 88–89 (5th Cir. 1993)).

Respondent answers that this claim fails because it is conclusory and otherwise fails to demonstrate that the TCCA's denial of it was unreasonable. The Court agrees. The TCCA implicitly found that Cintron could not satisfy either prong of *Strickland*. Judge Moss concluded that Cintron's sentence was within the statutory range of punishment and found that it was not excessive based on Cintron's prior conviction and 10-year sentence for aggravated assault with a deadly weapon and the egregious fact of this offense, which involved Cintron anally and orally sexually assaulting his 15-year-old nephew after providing him methamphetamine. Dkt. No. 12-25 at 99–100. He also found that any objection raised by Adams that Cintron's sentence was unconstitutionally excessive would have been frivolous. Again, these factual findings are presumed correct unless

Cintron presents clear and convincing evidence that demonstrates otherwise. He has not done so. Apart from his own opinion and self-serving conclusory statements, Cintron presents no evidence to substantiate his claim that there is a reasonable probability that the trial court would have given him a lesser sentence had Adams presented this purported mitigating evidence. He merely speculates that it might have. A conceivable likelihood of a different outcome is insufficient to establish prejudice under *Strickland*.

For these reasons, the Court concludes that Cintron fails to demonstrate that the TCCA's application of *Strickland* to this claim was unreasonable. He is not entitled to relief on this ground.

### C.    Failure to Challenge Indictment (Ground Three)

In Ground Three, Cintron claims that Adams was ineffective for not challenging the indictment based on the fact that it included the wrong offense date and was not presented in open court in the presence of the grand jury. Respondent answers that this claim is conclusory and has no merit. The Court agrees.

The TCCA implicitly found that Cintron could not satisfy either prong of *Strickland*. Judge Moss found that Adams had no legitimate basis to object to the indictment and that any objection to it would have been frivolous. Dkt. No. 12-25 at 98. It is well settled that failure to make a frivolous objection cannot constitute ineffective assistance of counsel under *Strickland*. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Because Cintron fails to show that the TCCA's adjudication of this claim was unreasonable, he is not entitled to relief on this claim.

### D.    Failure to Object to Disproportionate Sentence (Ground Four)

In Ground Four, Cintron claims that Adams was ineffective for failing to object to his life sentence as disproportionate to other sentences imposed for more violent sexual

crimes. Respondent answers that this claim is conclusory and has no merit. The Court agrees.

The TCCA implicitly found that Cintron could not satisfy either prong of *Strickland*. At the evidentiary hearing, Adams testified that, in his 30-year practice before the 35th Judicial District Court, a life sentence for an offense of sexual assault with repeat-offender allegations is not disproportionate to other sentences imposed there. Judge Moss found Adams's testimony credible and, in turn, found that (1) a life sentence is common in cases with similar facts within the court's jurisdiction; and (2) any objection by trial counsel that Cintron's sentence was unconstitutionally excessive would have been frivolous. Dkt. No. 12-25 at 100. Again, because Cintron fails to rebut the presumptive correctness of these factual and credibility findings with clear and convincing evidence, he cannot demonstrate that the TCCA's application of *Strickland* to his claim was unreasonable. He is therefore not entitled to relief on this claim.

4.  **Conclusion**

For the foregoing reasons and those stated in Respondent's answer, the Court concludes that Cintron has failed to demonstrate that the TCCA's adjudication of his claims resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. *See* 28 U.S.C. § 2254(d).

The Court therefore orders:

(1)  The petition for writ of habeas corpus is denied and dismissed with prejudice.

(2)  All relief not granted is denied.

(3) Under Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c), this Court concludes that a certificate of appealability should be denied. For the reasons set forth above and in Respondent's answer, Cintron has failed to show that reasonable jurists would find (1) this Court's "assessment of the constitutional claims debatable or wrong," or (2) "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court will enter judgment accordingly.

Dated January 31, 2025.

JAMES WESLEY HENDRIX
United States District Judge